Nickerson, Gary A., J.
The motion at hand encompasses two distinct issues. First, is MRJE, LLC entitled to maintain this declaratory judgment action under Count I to contest the condominium common charge assessed against it due to septic system repairs? Second, is Planet Restaurant’s obligation to pay “Additional Rent” under section 2.5(a.) of the lease capped at $535.00 per month?
This case, 06-704, was consolidated on February 26, 2007 with case 07-98. On September 26, 2007, Justice Ford entered rulings on the motion to dismiss in case 06-704 and on the motion for summary judgment in case 07-98. Summary judgment was granted against MRJE’s counterclaim in 07-98 on the basis that MRJE had not paid the disputed common charge prior to bringing its counterclaim. Nonetheless, MRJE’s request for a declaratory judgment as to the propriety of the common charge under Count I of case 06-704 survived. After the appeal period on said judgment expired, MRJE paid the now contested common charge in the sum of $111,493.72.
The issue is whether MRJE preserved its right to challenge the legality of the common expense assessment where, after prematurely filing a declaratory judgment action, MRJE paid the outstanding balance one year later in compliance with an un-appealed court order in a collection action that was consolidated with MRJE’s affirmative suit. It is axiomatic under Massachusetts law that, as a condition precedent to challenging the validity of a condominium common charge, the unit owner must pay the amount owed (1) in a timely fashion and (2) under protest. Blood v. Edgar’s, Inc., 36 Mass.App.Ct. 402, 406 (1994).
The prohibition of self-help remedies (i.e. asserting an offset or withholding payment) is predicated upon the core public policy concern that condominium associations require prompt collection of such revenue to ensure their financial solvency and ability to provide uninterrupted, quality services to unit occupants. See M.G.L.c. 183A, §6; Trs. of the Prince Condo. Trust v. Prosser, 412 Mass. 723, 726 (1992) (emphasizing that “[a] system that would tolerate a unit owner’s refusal to pay an assessment because the unit owner asserts a grievance, even a seemingly meritorious one, would threaten the financial integrity of the entire condominium operation”). Courts have consistently held against unit owners who act in contravention of this policy.
Justice Ford did not expressly address the propriety of MRJE’s count for declaratoiy judgment under the rule of Blood. Apparently Count I survived the first round of dispositive motions in September 2007 because no one recognized the Blood impediment to that particular count. There is no question that MRJE did not make its payments in a timely manner. MRJE remitted the assessment for the septic system repairs *347 via two installments in November and December of 2007, one year after MRJE was obligated to pay the bill as a precondition to seeking judicial redress. In light of the legislative emphasis placed upon expeditious collection of common area expenses, payment one year after the due date cannot be held timely as a matter of law.
Additionally, MRJE’s eventual payment of the assessment by way of the $111,493.72 judgment was not made “under protest.” Where a unit owner only pays the assessment per court order in a collection action, does not appeal that result, and relies upon a prematurely filed declaratory judgment claim to suggest the payment was made “under protest,” the unit owner has not satisfied the second criterion established by Blood. MRJE cannot proceed to trial.
To the extent that Counts II, III and IV of the Second Amended Complaint seek to establish that the “Additional Rent” under paragraph 2.5(a.) of Planet’s lease is capped at $535.00 per month, judgment must enter for the defendants. The specific issue here is whether the phrase “fixed for term of Lease” in §2.5(a) creates an ambiguity as to Planet’s “Additional Rent” obligation. Ambiguity within a contract exists “only if [the terms are] susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Basis Tech. Corp v. Amazon.com, Inc., 71 Mass.App.Ct. 29, 36-37 (2008), quoting Citation Ins. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995). Justice, common sense, and the parties’ probable intent should serve as the court’s guides in constructing a contract’s meaning. Fried v. Fried, 5 Mass.App.Ct. 660, 664 (1977).
It is well-settled that a contract should be interpreted so as to give it effect as a rational business instrument, viewed in light of the parties’ circumstances and objects sought to be achieved at the time of the agreement’s making. Post v. Belmont Country Club, Inc., 60 Mass.App.Ct. 645, 651 (2004), citing Shea v. Bay State Gas Co., 383 Mass. 218, 222-32 (1981); Lewis v. Chase, 23 Mass.App.Ct. 673, 677 (1987). Given the strong judicial disfavor in Massachusetts toward regarding any contractual provision as surplusage, every word and phrase should be construed to give it effect if reasonably possible. Starr v. Fordham, 420 Mass. 187, 192 (1995). Where two provisions cannot be reconciled, the clause “requiring something to be done may be given greater consideration than the other which defeats a full performance . . . and [ ] while repugnant words may sometimes be rejected, such a result is only to effectuate the evident purpose of the entire instrument.” Kennon v. Shepard, 236 Mass. 57, 59 (1920); see also Rosen v. A-H, Inc., 17 Mass.App.Ct. 126, 130 (1983).
Under the preferred method for resolving the meaning of “fixed for term of Lease,” this court reconciles the phrase with the other language of the “Additional Rent” provisions so as to give force to each in carrying out the parties’ intent. See Gustafson v. Wachusett Rea’l Sch. Distr., 64 Mass.App.Ct. 802, 807 n.7 (2005) (noting that language upon which a controversy hinges should not be treated as superfluous where any other construction is rationally possible). The estimate of “Additional Rent” could be read as an explanatory statement of Planet’s liability based on the Lease’s enumerated obligation with respect to operation costs and common expenses. Use of the word “estimate” indicates the potential for inexactness and fluctuation. Couching the statement in parentheses also suggests that it was inserted for informational value and is not inconsistent with the surrounding provisions.
By comparison, in Winsor v. Ulin, 223 Mass. 282, 284 (1916), the Massachusetts Supreme Judicial Court held that the words “present valuation thereof’ and “namely, $98,900" were not repugnant for purposes of calculating additional rent, even though the subject property had actually been valued at $125,000. There, the lessor was permitted to recover the extra rent since the lease provided for any adjustment that might be made in the valuation. Id., Similarly, the language of the ’’Other Costs" provision of Planet’s Lease, in conjunction with §2.4(vi), seems to anticipate future charges exceeding the $535.00 estimate. In light of the entire document, the phrase “fixed for term of Lease” can be construed as an attempt— rather than a guarantee — to limit “Additional Rent” chargeable to Planet for the balance of Planet’s tenancy.
Alternatively, this court could find that the phrase cannot be harmonized with the rest of §§2.4 and 2.5. The phrase arguably contradicts the parties’ understanding that Planet would assume its annual share of the condominium’s operating costs as a condition of renting Unit D-12.[1] A literal reading of these five words renders nugatory the several clauses of the Lease requiring Planet to pay for repair, maintenance, and replacement of the common areas and facilities. At the time Planet signed the Lease, the monthly estimate of “Additional Rent” almost certainly could be expected to deviate in light of the expenses subsumed under that heading and the potential for a 20-year lease term. Moreover, use of the words “estimated” and “fixed” to describe the same number would appear oxymoronic. The unequivocal provisions calling for Planet to pay its proportionate share of operation costs and common charges should be accorded greater consideration, warranting rejection of the repuguant phrase “fixed for term of Lease.”
To the extent that Count II of the Second Amended Complaint seeks to determine if Planet Restaurant is entitled to a credit against the common charge because the agreement between Carboneau and Hajjar allegedly established a $175,000 sum earmarked to reduce the future tenant’s shares of the septic system repair, the issue is governed by Justice Connon’s *348 ruling on Defendant’s Motion For Summary Judgment on October 23, 2008 (case 06-704, pleading no. 24). While the issue was not singled out in the Justice’s denial of the motion, the issue was addressed by the parties in their respective motion and opposition. Justice Connon found there were genuine issues of material fact in that regard which preclude the entiy of judgment short of a trial.
In summary, all claims by MRJE are to be dismissed. Planet’s claim that “Additional Rent” payments are capped at $535.00 per month fails. All that remains for trial is whether Planet is entitled to the benefit of Carboneau and Hajjar’s alleged agreement that $175,000 was earmarked to reduce the unit owners and tenants’ share of the septic system repair.

ORDER

For the above-stated reasons it is ORDERED that the Defendants’ Renewed Motion For Judgment On The Pleadings be ALLOWED against MRJE, LLC and ALLOWED against Planet Restaurant, Inc. to the extent of Planet’s claim that additional rent payments under the lease are capped at $535.00 per month and otherwise it is ORDERED that said motion be DENIED as to Planet Restaurant, Inc.

 The Lease did provide under §4 that Realty Trust “shall furnish services,” including “all structural repairs and capital expenses, whether interior or exterior, including mechanical systems.” This does not seem to indicate that Realty Trust assumed full responsibility to pay for such services, since the items listed in §4 also appeared as operating costs and common charges under §2.4.